```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

PNC BANK, NATIONAL                           CIVIL ACTION
ASSOCIATION

VERSUS                                       NO: 07-9052

MBS REALTY INVESTORS, LTD.,                  SECTION: J(4)
ET AL

### ORDER AND REASONS

Before the court is Plaintiff PNC Bank, National Association's **Motion for Summary Judgment (Rec. Doc. 10).** Plaintiff seeks to hold Defendants Michael and Carol Smuck and MBS Realty Investors, Ltd. ("MBS") liable for repayment of the remaining balance owed on funds loaned to MBS, plus interest.

This motion, which is opposed, was set for hearing on March 5, 2008 on the briefs. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Plaintiff's motion should be granted.

### Background Facts

MBS and the Smucks executed several agreements whereby PNC loaned MBS a certain amount of money, with the Smucks serving as

guarantors of the loan.  The terms of repayment were specified in the Credit Agreement.

On October 1, 2007 and November 1, 2007, MBS failed to make payments on the loan, and PNC now seeks repayment from the Smucks under the terms of the Credit and Pledge Agreements and the Guaranty.

## The Parties' Arguments

In support of its motion, PNC cites to the agreements executed by Defendants.  PNC asserts that the Credit Agreement established when each payment was to be made and the amount to be paid, including interest.  Relevant sections of the Credit Agreement pertaining to repayment, interest, and default provide:

> Section 3.1 Payments
> [P]ayments of principal, interest and other amounts to be made by the Borrower . . . shall be made in Dollars, in immediately available funds, . . . to the Lender at its Principal Office, not later than 2:00 p.m. on the date on which such payment shall become due.
>
> Section 2.2 Rates and Payment of Interest on Revolving Loans
> (a) Rates
> The Borrower [MBS] promises to pay to the Lender [PNC] interest on the unpaid principal amount of each Revolving Loan for the period from and including the date of the making of such Revolving Loan to but excluding the date such Revolving Loan shall be paid in full, at the Prime Rate . . . . [D]uring the continuance of an Event of Default, the Borrower shall pay to the Lender interest at the Post-Default Rate on the outstanding principal amount of any Revolving Loan . . . (including without limitation, accrued but unpaid interest to the extent permitted under Applicable Law).

> (b) Payment of Interest
> Accrued interest on each Revolving Loan shall be payable monthly on the first Business Day of each calendar month.  Interest payable at the Post-Default Rate shall be payable from time to time on demand.  All determinations of an interest rate hereunder shall be conclusive and binding on the Borrower for all purposes, absent manifest error.
>
> Section 11.1
> (a) Default in Payment
> The Borrower shall fail to pay when [principal or interest] due on any of the Revolving Loans . . . [is not made], provided that no Event of Default shall be deemed to occur . . . unless Borrower shall fail to make such payment within five (5) days following written notice from Lender to Borrower.

According to the Credit Agreement, then, Defendant's failure to pay constitutes default.

The Smucks, having executed a Guaranty and Pledge to induce PNC to loan MBS the requested funds, are now liable for repayment of the loan.  Under the Guaranty, the Smucks guaranteed the "punctual payment and performance when due" of all indebtedness under the Credit Agreement and of attorneys' fees and expenses for enforcement of the foregoing obligation.[1]  (Exhibit A-3, page

---

[1] Additional support for inclusion of attorneys' fees stems from the Credit Agreement, Section 12.2, Expenses:

> The Borrower [MBS] agrees . . . to pay or reimburse the Lender for all its costs and expenses incurred in connection with the enforcement or preservation of any rights under the Loan Documents, including reasonable fees and disbursements of its counsel.

3

1, Section 1). Further stated in Section 2 of the Guaranty is that the guaranty is one of payment, not collection, and that the lender, PNC, is not required to pursue legal remedies against MBS before enforcing the Guaranty. In sum, Plaintiff calculates the amount owed, principal, interest, and attorneys' fees to be $12,300,630.57 as of November 13, 2007. Plaintiff also points out that Defendants do not dispute the terms of the contract, that MBS has defaulted on the loan, the amount due, or the payment of attorneys' fees. As such, the terms and conditions of the contract should be enforced against the parties.

## Discussion

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986).

Here, the interpretation of the contract is not disputed. Rather, the determination is whether enforcement of the contract is appropriate, despite Defendants not objecting to any of

Plaintiff's assertions.

It is clear that the Smucks, as guarantors, are responsible for repayment of the indebtedness on behalf of MBS under the Guaranty and Credit Agreement.  See <u>Federal Deposit Ins. Corp. v. Cardinal Oil Well Servicing Co., Inc.</u>, 837 F.2d 1369, 1371 (5th Cir. 1988).  The only opposition raised by the Smucks is that enforcement of the contract could cause severe hardship due to the lasting effects of financial problems caused by Hurricane Katrina.

The agreements of the parties before the Court are valid and there is no legal basis on which they should not be enforced, other than the hardship it may cause to Defendants.  However, "[i]n the absence of ambiguity, . . . it is the function of the court to construe and enforce the contract as written, regardless of whether it . . . works a hardship."  <u>Jahrman v. Valley Air Park, Inc.</u>, 333 So. 2d 712, 714 (La. App. 2d Cir. 1976).  Accordingly,

**IT IS ORDERED** that **Plaintiff's Motion for Summary Judgment (Rec. Doc. 10)** is hereby **GRANTED.**

New Orleans, Louisiana, this 17th day of March, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE